**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sally Smith,<br><br>  Plaintiff,<br><br>v.<br><br>Unum Life Insurance Company of America,<br><br>  Defendant. | No. CV-21-01858-PHX-DGC<br><br>**ORDER** |

Plaintiff Sally Smith brought suit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"). In a case management order, the Court concluded that limited discovery was warranted in this case and instructed the parties to file memoranda addressing whether Plaintiff should be permitted to conduct discovery into reserves and the training and experience of Defendant's employees. Doc. 16 at 1, 4. The Court has reviewed the parties' memoranda (Docs. 19, 20) and concludes that discovery into reserves, training, and experience is warranted. To ensure discovery remains limited, the Court will require Plaintiff to propose the specific discovery requests regarding these topics she wishes to serve on Defendant before discovery proceeds.

**I.    Background.**

Plaintiff, while employed by CVS, sought long term disability ("LTD") benefits through the CVS Caremark Welfare Benefit Plan (the "Plan"). Doc. 1 ¶¶ 4, 8. The Plan is an ERISA benefit plan for which Defendant was a third-party claims administrator. *Id.* ¶¶ 2, 5. On October 27, 2020, Defendant denied Plaintiff's LTD claim, asserting that she

did not meet the definition of disabled under the Plan. *Id.* ¶ 25. Plaintiff appealed the denial, but Defendant issued a final administrative determination denying Plaintiff LTD benefits. *Id.* ¶¶ 34, 57. Plaintiff alleges that Defendant's denial of her claim was an abuse of discretion because it was against the weight of the medical evidence and based on inconsistent and biased reports by peer reviewers. *Id.* ¶¶ 31-35, 59-61. She also alleges that Defendant rejected her claim as part of an aggressive strategy to limit its liability for LTD claims during a time when it was suffering a known $2.1 billion reserve deficiency and significant income losses. *Id.* ¶¶ 90-96.

The parties agree that some limited discovery is appropriate in this case because Defendant, as both administrator and payor of the Plan, had a structural conflict of interest. Doc. 14 at 5-6. They disagree, however, on the appropriate scope and topics of discovery, with Plaintiff seeking discovery on Defendant's reserves and the training and experience of its employees. *See id.* The Court in its case management order asked the parties to submit memoranda addressing the bases for this discovery with reference to its decision in *Wilcox v. Metro. Life Ins. Co.*, No. CV 04-0926 PHX-DGC, 2009 WL 57053 (D. Ariz. Jan. 8, 2009). Doc. 16 at 4.

**II.     Appropriate Scope of Discovery.**

In determining the proper scope of discovery in an ERISA case, a court must balance two conflicting considerations: first, the primary goal of ERISA to provide inexpensive and expeditious resolution of benefits disputes, *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005); and second, the district court's duty to consider "any relevant evidence" about a defendant's history of biased decision-making, *see Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 930 (9th Cir. 2012). What discovery is permissible in furtherance of these two goals is often a challenging line to draw and "a matter within the district court's discretion." *Burke v. Pitney Bowes Long-Term Disability Plan*, 544 F.3d 1016, 1028 n.15 (9th Cir. 2008).

### A. Reserves.

Plaintiff seeks discovery regarding Defendant's reserves and related financial information. Doc. 19 at 3. The related financial information Plaintiff seeks includes financial projections, recovery plans, and weekly tracking reports. *Id.* at 4-5. Plaintiff argues that Defendant has a long history, documented by other courts, of biased administration of ERISA claims and asserts that discovery allowed in some of these other cases reveal that Defendant forecasts and targets claims for potential recoveries – that is, denials resulting in reserve releases – and that these recoveries are tracked at the claim level on individual employee computers and in weekly tracking reports. *Id.* at 4.

Plaintiff argues that reserve information is discoverable whether or not claims personnel are given it because it is relevant to the structural conflict of interest. *Id.* at 2. Plaintiff argues that such discovery is appropriate here because several facts suggest that Defendant's decision-making process was influenced by financial considerations. *Id.* at 3. First, she alleges that Defendant had a known reserve deficiency and as a result engaged in aggressive claim termination efforts companywide. *Id.* at 2. Second, Plaintiff asserts that CVS terminated its LTD benefits plan with Defendant during the pendency of Plaintiff's claim, increasing Defendant's incentive to deny her claim because it could no longer expect premium payments from CVS. *Id.* at 3 (citing *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 RPP, 2011 WL 5301588, at *6 (S.D.N.Y. Nov. 3, 2011)). Third, Plaintiff notes that Defendant approved her self-funded short-term disability benefits, but denied her LTD benefits for which it would be financially responsible. *Id.* This shows, Plaintiff argues, that there is more than a theoretical connection between the discovery she seeks and the effect of the conflict. *Id.* at 5.[1] Plaintiff also proposes to limit this discovery to the "block" that managed her claim to ensure the discovery remains proportional to the needs of the case. *Id.* at 6.

---

[1] Plaintiff argues that she has met the *Wilcox* standard of a "more than theoretical connection" between the discovery and the effect of the structural conflict, but that the Ninth Circuit in *Abatie v. Alta Health*, 458 F.3d 955, 967 (9th Cir. 2006), rejected the idea that there must be a "nexus" between the structural conflict and an irregularity in the case file before discovery is allowable. Doc. 19 at 5 n.2 (citing *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*, 262 F. Supp. 3d 917, 919 (D. Ariz. 2016)).

Defendant argues that there is "nothing sinister" about the metrics Plaintiff seeks because Defendant, like other insurance companies, keeps them to ensure its ongoing viability. Doc. 20 at 3. In an affidavit attached to Defendant's memorandum, Michael Collette, a director of LTD Benefit Operations for Defendant at the office that handled Plaintiff's claim, asserts that the metrics Plaintiff describes were not available to or considered by the claims or appeals staff that made the determination to deny Plaintiff's claim. *Id.* at 11-12. Mr. Collette also avows that claims and appeals staff were not given claim closure quotas, goals, or targets and that Defendant's finances and reserves are not considered, used, or reviewed as a part of claim determination. *Id.* at 10-11, 13. Thus, Defendant argues, these metrics are irrelevant and not discoverable. *Id.* at 4. Defendant also asserts that the metrics Plaintiff seeks to discover are too broad, arguing that Plaintiff "asks the Court for permission without limitation." *Id.* at 2.

Plaintiff has shown that some of the discovery she seeks has "more than a theoretical connection to the effect of the structural conflict in this case." *Wilcox*, 2009 WL 57053, at \*3; *see also Lieberman v. Unum Grp.*, No. 5:20-cv-1798-JGB (SPx), 2021 WL 4807643, \*4 (C.D. Cal. Oct. 14, 2021) (granting discovery on reserves where defendant had structural conflict of interest and plaintiff alleged "defendants' incentive to self-deal is greater in this case because they face a multi-billion dollar reserves shortfall"); *McCurdy v. Metro. Life Ins. Co.*, No. CIV S-05-0634 WBS EFB, 2007 WL 915177, \*4 (E.D. Cal. Mar. 23, 2007) (allowing discovery on reserves because "such evidence may shed light on the admitted 'structural conflict of interest' present in this case") (citations omitted). Limited discovery into these topics is therefore appropriate.

Though Defendant supports its argument that these materials are irrelevant with an affidavit stating that relevant employees were not given any of this information and did not consider it when evaluating Plaintiff's claims, the Court cannot conclude that this affidavit should end the matter.[2] Plaintiff has shown that a structural conflict of interest exists in

---

[2] The Court also notes that the affidavit, taken as true, does not contradict that the types of documents Plaintiff seeks – including recovery plans and weekly tracking reports – exist, stating only that they were not "considered, used or reviewed" by relevant personnel. *See* Doc. 20 at 11. The affidavit also concedes that relevant personnel may

- 4 -

this case, that it was publicly reported around the time that Plaintiff's claim was pending that Defendant was suffering from a severe reserve deficit and revenue shortfalls, that CVS terminated its contract with Defendant while her claim was being considered, and that discovery in other cases against Defendant have revealed working conditions contrary to those described in Defendant's affidavit. Plaintiff is entitled to test the assertions in Defendant's affidavit by way of limited discovery.

### B. Employee Training and Experience.

Plaintiff also seeks discovery regarding the "training, experience, and performance of employees involved in claims handling or claims supervision." Doc. 19 at 6. She argues that this information is relevant because it can reveal whether a conflict affected a benefits denial. *Id.* at 7. Plaintiff asserts that this information is relevant in her case because Defendant failed to conduct an in-person examination of her, instead relying on its own employees or reviewers who prepared biased and inconsistent reports. *Id.* This discovery, Plaintiff argues, would help reveal whether the denial was tainted by incentives or pressures to meet financial goals. *Id.*

Defendant responds that courts are split on whether this type of personnel information is discoverable both in the ERISA context and in the context of ordinary, broader discovery. Doc. 20 at 4-5. Relying on the affidavit of Mr. Collette, Defendants also argue that compensation of claims personnel is not dependent on claim outcomes. *Id.* at 2. Defendant does offer to produce its "extensive electronic claims manual that contains its procedures . . . . [and] is used to train employees" as well as the "performance plan template applicable to the claims personnel and appeals personnel who made the determination to deny Plaintiff's claim." *Id.* at 6.

The Court finds that limited discovery regarding the training, experience, and performance of the employees involved in evaluating Plaintiff's LTD claim is more than theoretically connected to the structural conflict in this case and is warranted. *See Klein v.*

---

have been aware of Defendant's financial state by way of publicly available information (*Id.* at 12), and it appears that Defendant's significant revenue losses and reserve shortfall were publicly reported. *See* Doc. 1 ¶ 94.

- 5 -

*Nw. Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1128 (S.D. Cal. 2011) (allowing discovery "into the compensation, guidance, and performance evaluations given to the people involved in the handling of [plaintiff's] claim" where defendant operated under a structural conflict of interest). While Defendant's affidavit states that there were no incentives or pressures on claims and appeals personnel to meet financial goals, Plaintiff is entitled to test this assertion with some discovery.

**III.     Specific Discovery Proposals Are Required.**

Plaintiff has not been sufficiently specific about the information she wishes to discover. In a joint case management report, Plaintiff asked the Court to permit her to conduct four depositions and, if she was permitted to do so, that she anticipated noticing a 30(b)(6) deposition as well as the depositions of Medical Director Renee Schreiber Chervenak, claims handler Elizabeth Hurley, and appeals specialist Kelsey Maier. Doc. 14 at 5. She anticipates the 30(b)(6) deposition will last up to seven hours, but no more than four hours each for the other depositions. *Id.* at 6. Plaintiff also seeks to serve up to fifteen interrogatories, fifteen requests for production, and five requests for admission. *Id.* But Plaintiff has given no other concrete details regarding the topics of the depositions or the information she seeks to elicit.

Because discovery in ERISA cases is limited, the Court will review the actual interrogatories, requests for production, and requests for admission that Plaintiff wishes to serve rather than granting blanket permission for discovery to proceed on these topics. This procedure will help limit discovery, prevent additional discovery disputes from coming before the Court, and the promote primary goal of ERISA to provide an inexpensive and expeditious means to resolve disputes over benefits.

Plaintiff shall file, within one week of this order, the particular interrogatories, requests for production, and requests for admission that she wishes to serve regarding reserves and employee training and experience. She should also provide the Rule 30(b)(6) notice she intends to serve and the topics that would be covered in other depositions. *See id.* Defendants will submit any objections they have to Plaintiff's proposed discovery one

week after she files her proposal.  Plaintiff shall not file a reply unless requested by the Court.

**IT IS ORDERED** that limited discovery regarding Defendant's reserves and the training and experience of its employees will be permitted.  The parties shall follow the procedures set forth above, and the Court will issue an order on the specific discovery that is allowed.  The parties' filings shall not exceed 7 pages each.

Dated this 18th day of April, 2022.

*David G. Campbell*
David G. Campbell
Senior United States District Judge